# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

```
--------------------------------------------------X
VERIZON SERVICES                    :
ORGANIZATION INC.,                  :
                   Plaintiff,       :
                                    :          Civil Action No. _____
v.                                  :
                                    :
COMMUNICATIONS WORKERS OF           :
AMERICA, AFL-CIO,                   :
                                    :
                   Defendant.       :
--------------------------------------------------X
```

## COMPLAINT

Plaintiff Verizon Services Organization Inc. ("Verizon") files this Complaint pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, et seq. (the "LMRA"), and the Declaratory Judgment Act, 28 U.S.C. § 2201, and in support states as follows:

## NATURE OF THE ACTION

Verizon seeks a declaratory judgment concerning a Memorandum of Agreement ("MOA") between Verizon and Defendant Communications Workers of America, AFL-CIO ("CWA") on union organizing procedures, including election procedures by which Verizon agreed to permit CWA to attempt to organize certain Verizon employees. Specifically, Verizon seeks a declaratory judgment that the "objections" set forth in an April 25, 2007 letter by CWA are not substantively arbitrable under the MOA and that, accordingly, the Third Party Neutral ("TPN") does not have jurisdiction to hear or resolve these objections under the MOA.

## JURISDICTION AND VENUE

1.    The claim asserted in this Complaint is brought under Section 301 of the LMRA, 29 U.S.C. § 185, and under the Declaratory Judgment Act, 28 U.S.C. § 2201.

2.    Jurisdiction of this Court is based on Section 301 of the LMRA, 28 U.S.C. § 1331 and 28 U.S.C. § 2201.

3.    Venue in this District is proper under 28 U.S.C. § 1391 and Section 301 of the LMRA.  This is the judicial district in which CWA's duly authorized officers or agents, at all times relevant, engaged in representing or acting for employee members, and in which it maintains its principal office.

## PARTIES

4.    Verizon is a Delaware corporation, with its principal place of business at 600 Hidden Ridge in Irving, Texas.  Verizon is an employer in an industry affecting commerce within the meaning of Section 301 of the LMRA.  Verizon is a wholly-owned subsidiary of GTE Corp., which is a wholly-owned subsidiary of Verizon Communications Inc.

5.    Defendant CWA is an unincorporated association.  At all times relevant to this dispute, CWA has been a labor organization as defined in Section 301 of the LMRA, and is a signatory with Verizon to the MOA.  CWA maintains its principal office at 501 3rd Street NW, Washington, DC 20001 and conducts labor-related activities in the District of Columbia.

## FACTS

6.    At all times relevant, Verizon has been a party to the MOA (attached as Exhibit 1) with CWA.  The MOA at issue became effective on August 1, 2005 and (as extended by a letter agreement between the parties) is scheduled to remain in effect until March 13, 2010.

WAI-2825873v1                                   2

7.     The introduction to the MOA provides that it shall be the exclusive means by which CWA will attempt to organize Verizon's employees.

8.     Section 6 of the MOA provides that Verizon and CWA have chosen to use the MOA organizing process rather than the NLRB process to organize Verizon's employees.

9.     Section 1 of the MOA provides that, in entering into the MOA, the parties intended to "establish, encourage and nurture an environment *during a union organizing drive* that will allow employees to choose whether or not to become represented in a fully informed and uncoerced manner."  (emphasis added).

10.     Section 4 of the MOA specifically states that "[i]t is in the interest of both parties that the organizing campaign be conducted expeditiously."

11.     Section 8 of the MOA sets forth the grievance and arbitration procedures to be followed by the parties during the course of a union organizing effort.

12.     Under Section 8(a) of the MOA, disputes "arising during the course of an organizing effort" are to be resolved by a Third Party Neutral ("TPN") after the parties have attempted in good faith to resolve the matter.

13.     Pursuant to Section 3(d) of the MOA, the TPN may "resolve any issue concerning challenged ballots in similar fashion to the National Labor Relations Board (NLRB) process."

14.     Under the "National Labor Relations Board Process" contemplated in Section 3(d) of the MOA, ballot challenges must be resolved before ballots are cast.

15.     Under Section 8 of the MOA, in accordance with the parties' intention of expeditiously resolving disputes, pre-election disputes may be referred to the TPN on three days' notice to the other party and the TPN.

16.      Section 8 of the MOA does not provide for any post-election objections, nor does the MOA provide any other terms that apply to or refer to post-election rights or duties.

17.      Under the MOA, once votes have been counted and CWA has lost the election, the organizing campaign is at an end for at least twelve months and the TPN is divested of authority to hear or resolve disputes between the parties.

18.      In 2005, the parties invoked the pre-election dispute resolution provisions of the MOA to resolve various issues during an organizing campaign at Verizon California's Long Beach, California MCOW facility. The TPN for the 2005 dispute was John Wells.

19.      In September 2005, a decision resolving the dispute (attached as Exhibit 2) was reached by TPN Wells and signed by him, Verizon, and CWA. The decision provided that the TPN "retain[ed] jurisdiction *through . . . [the] election to immediately resolve any disputes . . . .*" (emphasis added). The decision further provided that "[t]he party with the dispute is responsible to *promptly* refer any matter [to the TPN] after a good faith effort is made to resolve the matter." (emphasis added).

20.      The parties conducted another election campaign in 2007 at the Long Beach MCOW facility. An election was held on April 20, 2007, in accordance with the rules and procedures set forth in the MOA, whereby the TPN counts the votes and certifies the result.

21.      CWA lost the election held on April 20, 2007.

22.      For the 2007 campaign, the TPN selected by the parties was Arbitrator Louis Zigman. Despite the dispute resolution procedures in the MOA, which only provides for pre-election challenges, and the September 2005 decision that the TPN's jurisdiction to hear

challenges was limited to the election, CWA did not file any kind of grievance for the TPN to resolve during the campaign, the pre-election period or on election day.

23.    After losing the election by failing to obtain a majority of votes, CWA sent a letter dated April 25, 2007 (attached as Exhibit 3) with a series of post-election objections (the "Dispute") and request for an arbitration hearing before TPN Louis Zigman.

24.    Thereafter, by letter dated May 4, 2007, Verizon notified CWA and TPN Zigman that Verizon would not agree to arbitrate the Dispute because it was not substantively arbitrable, as the Dispute constitutes an issue (i.e., post-election objections) that is not provided for under the dispute resolution provisions in the MOA.

## COUNT ONE -- DECLARATORY JUDGMENT

25.    Verizon realleges and incorporates herein by reference Paragraphs 1 through 21 of the Complaint.

26.    The Dispute is not substantively arbitrable.

27.    Verizon requests that this Court enter a declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and the Declaratory Judgment Act, 28 U.S.C. § 2201, that the Dispute is not substantively arbitrable.

WHEREFORE, Verizon demands the following relief:

(a)     A declaration by this Court that the Dispute is not substantively arbitrable;

(b)     A declaration by this Court that the TPN does not have jurisdiction under the MOA to hear or resolve the Dispute; and,

(c)     Such further and other relief as this Court deems proper.


Dated: May 4, 2007

                                        Respectfully submitted,


                                        _____
                                        Willis J. Goldsmith (D.C. Bar No. 945956)
                                        Thomas M. Beck (D.C. Bar No. 437680)
                                        JONES DAY
                                        51 Louisiana Avenue, N.W.
                                        Washington D.C.  20001-2113
                                        Phone:  (202) 879-3939
                                        Fax:  (202) 626-1700

                                        Attorneys for Plaintiff Verizon
                                        Services Organization Inc.

# EXHIBIT 1

## MEMORANDUM OF AGREEMENT

### between

### THE VERIZON/GTE COMPANIES

### and

### COMMUNICATIONS WORKERS OF AMERICA (CWA)

WHEREAS the Communications Workers of America, AFL-CIO (hereafter "CWA" or "the Union"), and Verizon Communications companies, which were subsidiaries of the former GTE Corporation (hereafter the "Verizon/GTE Companies" or "the Companies" or "the Company"), have collective bargaining relationships throughout the United States;

NOW THEREFORE THE VERIZON/GTE COMPANIES AND CWA agree as follows:

1.  Understandings set forth in Exhibits I through **X** as listed below become effective **August 1, 2005,** according to their terms.  These Agreements shall supersede or replace existing provisions and shall be deemed to be incorporated into the existing Collective Bargaining Agreements between the Verizon/GTE Companies and their CWA bargaining units except where the included companies or bargaining units may be expressly limited by the Understandings.

    Exhibits I through **X** are:

    | | |
    |---|---|
    | Exhibit I | Domestic Partner Benefits |
    | Exhibit II | Education And Life-Long Learning |
    | Exhibit III | Holidays |
    | Exhibit IV | Hourly Savings Plan (HSP) |
    | Exhibit V | Hourly Savings Plan |
    | Exhibit VI | Neutrality And Consent Election |
    | Exhibit VII | Union Leave Of Absence |
    | Exhibit VIII | Vacation Carry Forward (Banking) |
    | Exhibit IX | Service and Seniority Recognition |
    | **Exhibit X** | **Commuter Advantage Program** |

2.  These provisions shall be effective on **August 1, 2005**. The parties specifically agree that the terms and conditions set forth in Exhibits I through **X** shall terminate on **July 31, 2009**, or as otherwise extended and agreed in writing by the parties. If, however, the parties do not reach agreement on successors to Exhibits I through **X**, they shall renew for one year.

VERIZON/GTE COMPANIES

COMMUNICATIONS WORKERS OF AMERICA

Date: 6/20/05

Date: 6/20/05

**Exhibit VI**

## MEMORANDUM OF AGREEMENT

### between

### THE VERIZON/GTE COMPANIES

### and

### COMMUNICATIONS WORKERS OF AMERICA (CWA)

### NEUTRALITY AND CONSENT ELECTION

WHEREAS the Communications Workers of America, AFL-CIO (hereafter "CWA" or "the Union"), and Verizon Communications companies, which were subsidiaries of the former GTE Corporation (hereafter the "Verizon/GTE Companies" or "the Companies" or "the Company"), have collective bargaining relationships throughout the United States;

NOW THEREFORE THE VERIZON/GTE COMPANIES AND CWA agree as follows:

This Agreement between Company and the Union covers all understandings between the parties concerning union organizing; access to employees and code of conduct applicable to union organizing efforts.

The Union and the Company recognize that it is in their mutual interest to enhance the success and image of the Company, to acknowledge the Union as a valued partner, and to foster the pride and commitment of the employees. The parties also share the mutual goals of building a world class, high performance enterprise and addressing employment security through business success and employee development.  As a means to enhance these goals, the parties will mutually support regulatory and legislative efforts, marketing/sales and service efforts and other business initiatives leading to employment security and Verizon's business success.

The parties also recognize that the Union's goal of growing membership is intrinsically linked to the successful growth of the business.  In order to maintain this perspective and to avoid unnecessary confrontation, the parties agree that the following principles regarding neutrality and consent election will be applicable to Verizon's former "GTE Network Services Companies" (Incumbent Local Exchange Carriers and Logistics) **and Verizon Select Services Inc.** This shall be the exclusive means by which the Union, their locals, or individuals acting on their behalf, will conduct an effort to organize eligible employees in the covered Verizon's former "GTE Network Services Companies" (Incumbent Local Exchange Carriers and Logistics) **and Verizon Select Services Inc.** as defined by the National Labor Relations Act.

1.    Employee Choice

Both the Union and the Company support and agree with the principle that the decision as to whether or not to become represented by a union is one that does not belong to either the Union or to the Company. Rather, it is an individual decision that belongs to the employee. With the parties' mutual recognition of this fundamental tenet, the following provisions are intended to establish, encourage and nurture an environment during a union organizing drive that will allow employees to choose whether or not to become represented in a fully informed and uncoerced manner. All negotiations concerning appropriate unit, access, conduct and voting will be performed by Verizon Labor Relations Staff in conjunction with local management and designated Union representatives.

2.    Neutrality

The Company and the Union agree that an organizing drive will be met by a neutral position by the Company. This statement is consistent with and reinforces the previously established principle of employee choice. It should follow that an environment intended to foster employee choice would be a neutral environment and that information communicated by either party would be fact based and not misleading, distorted or disparaging. Neutrality means the following:

(a)    Management will not be anti-union nor will the Union be anti-management.

(b)    Management will not advocate that employees should not vote for a union to represent them.

(c)    The Unions will be afforded reasonable opportunities for access to employees to get their message communicated.

(d)    Management will respond to employee questions and is obligated to correct inaccurate or misunderstood information by employees.

(e)    The Union(s) will be referred to by name and will not be characterized as a "third party" or "outsider".

(f)    Any written information distributed to employees by either party relative to the organizing campaign will be shared with the other. The parties' communications with employees will be shared with the other. The parties' communications with employees will be in accordance with this Agreement.

(g)    Neither party will hire consultants who encourage an adversarial relationship.

(h)    Neither managers nor Union representatives will be personally attacked.

(i)    Neither the Union nor the Company will be attacked as institutions.

(j)    The Company will not conduct meetings for the sole purpose of discussing organizing activities without inviting appropriate Union representatives to attend.

Allegations of violations of these provisions will be handled via the dispute resolution process contained in this Agreement.

3.    Rules

The procedures to be followed are listed below:

(a)    The Union must show a minimum of 50% + 1 show of interest on signature cards of the appropriate unit.

(b)    A vote of 50% + 1 of those votes, validated by the Third Party Neutral (TPN), will determine the outcome.

(c)    If the Union is not successful, another election will not be scheduled for twelve months.

(d)    The TPN will resolve any issue concerning challenged ballots in similar fashion to the National Labor Relations Board (NLRB) process.

4.    Time Bound

It is in the interest of both parties that the organizing campaign be conducted expeditiously.  The Union is therefore obligated to notify management of its intention to conduct a formal organizing drive before it begins.  The date of this notification will "start the clock".  The entire campaign, including the consent election, will be concluded in 90 days. It is the intent of the parties that the 90-day time frame will include discussion and agreement on the unit.  In the event the parties are unable to agree on the unit, the dispute resolution process set forth below will be utilized and the time period will be extended by the number of days required to reach agreement on the unit, but in no event will the total campaign, including resolution of the scope of the bargaining unit and the consent election process exceed 120 days.  If employees vote

not to be represented, the Union agrees not to initiate another campaign (nor continue the current campaign) in that same work group for 12 months from the date of the conclusion of the campaign. This would not preclude the local Union from having contact with the workers in the group. If employees vote to be represented, collective bargaining over the terms and conditions of employment will commence within 60 days and will be limited to the agreed upon unit.

5.    Informed Decision

Both parties agree that employees should be fully informed about all aspects of Union representation. The Union will provide fact-based information to employees as it endeavors to convince prospective members of the merits of being represented by a labor union. Management's role during this process will include:

(a)    responding to individual employee inquiries;

(b)    explaining the organizing process, including obligations and responsibilities; and

(c)    correcting any inaccuracies, misstatements or misunderstandings disseminated by the Union.

6.    Free from Coercion

Consistent with the basic tenet of employee choice, the parties want to ensure that employees have expressed their choice from an informed position and are completely free from any coercion by the Company, the Union or any other party or parties. One way to ensure this objective is to have a NLRB conducted election.

In the alternative, the Company and the Union agree to use a process that is called "Consent Election."  This process will work as follows:

(1)    As part of the access discussions, the parties agree to use "Consent Election".

(2)    The Unions shall initiate the consent election process by providing to a TPN proof of support by means of show of interest cards from 50% + 1 of the employees in the unit. The TPN will then notify Verizon Labor Relations Staff and request a list of names, job titles and home addresses. The Company will furnish the list within five working days. The Union will also be furnished with the list. The "show of interest" cards will clearly state their purpose and that a secret ballot consent election will be conducted to determine the will of the unit. If the TPN determines that the Union has a sufficient show of interest, he/she will schedule a Consent Election process in accordance with this

Agreement.

(3)     The election process will be supervised by a mutually selected TPN, whose role is to ensure the integrity of the process itself, and will be conducted within two weeks of the submission of the Union's show of interest to the TPN. Employees will be asked to express their individual preference in a manner that will ensure that their choice will not be known to either party. The TPN will count the votes and advise the parties of the outcome. Consistent with this Agreement, a vote of 50% + 1 of those who vote will control. The parties may have an observer present when the TPN counts the ballots.

(4)     In all cases, the election process shall take place within 14 days of receipt and verification of the Union's show of interest cards by the TPN. In those cases where there is no dispute about the composition of the unit, the election process will be held within seven days. The election may be held at the Company location or at a neutral site as agreed by the parties. The cost of using a neutral site will be split equally by the parties.

If there is a dispute as to composition of the unit, the TPN shall decide the issue within an additional seven days.

7.     Access Agreement

As soon as reasonably practicable after a request by the CWA for access, Verizon Labor Relations Staff, in conjunction with local management and CWA representatives, will meet to discuss the details related to reasonable access to the unit by the CWA representatives. The Union will be allowed reasonable opportunities for access to Verizon facilities. It is the intent and commitment of Verizon and the CWA that the access agreed upon will not interfere with the operation and other normal and routine business activities, plans and programs of Verizon generally, and specifically, the selected unit. Access agreed upon will be in non-working areas and during employee non-working times. Agreements as to eventful access, such as access to conference rooms, will be reasonable in length and there will be reasonable periods between requests for eventful access. However, an uneventful access, such as a prearranged meeting with an individual employee, will not be affected.

If Verizon and the CWA are unable to agree on reasonable access, the TPN will be asked to resolve the issue. Successful access agreements utilized at other units will be looked to for guidance as to what works and is reasonable. Verizon and the CWA commit that they will reach such an access agreement in each instance in an expeditious manner.

8.    Dispute Resolution

(a)    Questions or disputes arising during the course of an organizing effort within a particular unit of non-represented employees will, in all cases, be addressed first by and between the parties themselves and, in particular, Labor Relations Staff in conjunction with local Verizon management and appropriate CWA representatives. It is the intent and desire of Verizon and the CWA that such matters are dealt with by and between the parties themselves, particularly at the local level, without having to resort to the assistance of a third party. It is also agreed, however, that if every good faith and reasonable effort has been made, but the matter unresolved, the process described below will be utilized.

(b)    The TPN will resolve disputes in the manner set forth in this Agreement. Either Verizon or the CWA can refer a question or dispute, unresolved after good faith efforts have been made to resolve the dispute locally, to the chosen TPN by providing three working days' written notice to both the other party and the TPN. The notice will provide concise statement of the question or dispute to be addressed and a statement that the parties have attempted in good faith but have been unable to resolve the matter by and between them.

(c)    If the question or dispute involves a matter related to access (i.e., the nature, event, time, location, individuals involved, etc.) the TPN will fully investigate all relevant facts surrounding the question or dispute. The TPN will then call the parties together and attempt to facilitate resolution of or otherwise mediate the matter.

If, after a good faith attempt at facilitated resolution or mediation, the access question or dispute is still not resolved, the TPN will attempt to render an immediate decision, which includes a method or alternative methods of resolving the perceived problem. However, in no event will the TPN take longer than five days thereafter to render a decision. The decision of the TPN will be final and binding and the parties agree to abide by his/her decision. This process, from the time the TPN is contacted to the time his or her opinion is issued, will not take more than 15 days unless the parties agree otherwise.

(d)    If the dispute involves the appropriateness of the bargaining unit the Union seeks to organize and the parties are unable to agree, after negotiating in good faith for a reasonable time, upon the description of an appropriate unit for bargaining, the issue of the description of such unit shall be submitted to TPN and a hearing

shall be conducted consistent with the rules of the American Arbitration Association. The TPN shall be confined solely to the determination of the appropriate unit for bargaining and shall be guided in such deliberations by the statutory requirements of the National Labor Relations Act and the decisions of the NLRB and Appellate reviews of such Board decisions.

(e)     Regardless of the type of question or dispute that is submitted to the TPN, the parties will each be given a full opportunity to present their positions and supporting factual information prior to the issuance of any opinion. No written briefs will be submitted. There shall be no ex parte contact with the TPN without the concurrence of all parties. Verizon and CWA believe that matters pertaining to these values are best handled by and between the parties themselves and resort to a TPN should be necessary in only a limited number of cases.

Verizon and the CWA agree that the parties may distribute a decision of the TPN to employees in the selected unit but not outside to the public such as the press.

(f)     The parties agree that the process set forth herein shall be the exclusive means for resolving disputes covered by this dispute resolution process, and neither party will utilize any other forum (e.g. NLRB, federal court, etc.) to address issues subject to resolution pursuant to this process.

(g)     All expenses, resulting from the use of the TPN process, shall be split equally by Verizon and CWA.

9.    Acquisitions and Ventures

The parties recognize the rapidly changing nature and structure of the communications industry. Verizon may acquire (or be acquired by) another entity. It has and may in the future form joint ventures or strategic alliances, may license its brand or technology, or may be a financial investor in other entities. The employees in those entities may be non-represented, represented in whole or in the part of the CWA, or represented in whole or in part by some other labor organization. It is not possible to structure a single rule which will apply to all such circumstances and the Company cannot compel other entities to abide by this Agreement.

# EXHIBIT 2

OCT 04 2005 12:02 FR VERIZON-UP LR    212 921 8716 TO 1212768364    P.02/03
10/03/2005    12:36    VERIZON NW LABOR RELATIONS → 912129218716    NO.189  P03

**The following reflects the ruling of TPN, John C. Wells regarding the 2005 MCOW organizing campaign in Long Beach California:**

- The campaign will be suspended effective August 18, 2005.  This will start a "quiet period" for the organizing activity.  The CWA will stop all organizing activity to include any MCOW employee contact (except contact with internal committee members), the distribution of material or events on or off the premises by representatives of the union.  The company will suspend issuing any Q&A or other campaign related communication to employees.  Should organizing related communication be warranted it will be issued jointly by the parties.

- It is understood that employees who are subject of the organizing campaign have the continued right to express their views within reason on their own time and in non-work locations.

- A joint communication will be issued that communicates a "no fault" message and joint agreement that there will be a "cooling off period".  It will include the restart of the campaign as of October 1, 2005 and an election to be held on October 31.

- The unit will be comprised of all ticket facing coordinators as of August 18, 2005.  The list of coordinators is attached.  No Specialists, exempt or non-exempt will be included.    Any employee on the August 18, 2005 list who leaves the job before the election will also be precluded from voting.

- The current Specialists (11) who currently perform ticket facing work will be excluded from the unit.  It is specifically understood that no exempt employee is included in the unit.  (See list of the Specialists)

- The above referenced ticket facing Specialists, while excluded from the unit will be grandfathered in that they may continue to perform ticket facing duties.  The company may replace these eleven Specialists if they leave the job but may not increase the number beyond eleven .

- The organizing campaign will restart on October 1, 2005 for a thirty day period and the election will be held on October 31, 2005.

OCT 04 2005 12:02 FR VERIZON-UP LR          212 921 8716 TO 1212?583646      P.03/03
10/03/2005    12:36    VERIZON NJ LABOR RELATIONS → 9121292.0110

Page 2, TPN ruling

- Questions have been raised about the inclusion of exempt employees in bargaining units covered by this NCE Agreement. After consideration of the facts and consultation with the parties, it is my decision that this NCE does not apply to any exempt employees.
- John Wells will retain jurisdiction through the cooling off period and campaign and election to immediately resolve any disputes the parties are unable to resolve. The party with the dispute is responsible to promptly refer any matter after a good faith effort is made to resolve the matter.

John C. Wells, TPN
date 9/12/05

Concurred:

Mark Bixler for CWA
date 9-2-05

Paul Gwaltney for Verizon
date 8/18/05

** TOTAL PAGE.03 **

# EXHIBIT 3

**Communications
Workers of America**
AFL-CIO, District 9

12215 Telegraph Rd., Ste. 210
Santa Fe Springs, CA 90670
562-944-1300 • Fax 562-944-0088

Tony Bixler
Vice President



**Via Email and Mail**

April 25, 2007

Paul Gwaltney, Director
Verizon Labor Relations
112 Lakeview Canyon Road CA501HL
Thousand Oaks, CA 91362

Louis M. Zigman, Esq.
473 South Holt Avenue
Los Angles, CA 90048

Dear Mr. Gwaltney and Mr. Zigman:

The Communications Workers of America, AFL-CIO (CWA), hereby notices and files the following protest and objections to the conduct of Verizon Communications in connection with the union representation consent election in the MCOW unit at 5000 Airport Plaza Drive, Long Beach, California on April 20, 2007.

The following conduct by the employer interfered with the employees' freedom of choice in the election. The employer's conduct violated the intent and express provisions of the National Memorandum of Agreement on Neutrality and Consent Election ("NCE MOA") between the parties, governing union organizing, access to employees and the code of conduct applicable to the parties prior to consent elections. The conduct of the employer set forth below, so interfered with the ability of the employees in the MCOW unit to be fully informed and choose, free from coercion, and so violated the employer's commitment to neutrality that the election must be set aside. CWA has made repeated attempts to resolve the company's violations of the NCE MOA with Verizon's management and Labor Relations staff. Despite CWA's good faith efforts to resolve these matters, the company continued to violate the NCE MOA, and created an environment where a fair election could not take place. The following conduct by Verizon management interfered with the employees' freedom of choice, violated the neutrality commitment of the employer and breached the provisions of the NCE MOA.

Mr. Paul Gwaltney and
Louis M. Zigman, Esq.
April 24, 2007
Page 2 of 4

1.      On March 27, 2007, the Company, through its management team, began its first "communication" to the MCOW unit employees about CWA's interest in organizing them and of the Company's intentions during the organizing campaign.  In this communication, the Company referred to the recent "changes" (decreases) in the employees' compensation and benefits as "inevitable" and that there is "no silver bullet" to roll back such changes.  By this first unilateral communication, the company put the employees on notice that it was hopeless for them to expect that the union could negotiate improvements to their compensation and benefits.  This conduct violates the intent of the NCE MOA as well as the express provisions of paragraphs 1 and 2.

2.      On March 30, 2007, the Company, through its Management Team distributed another flyer in which it falsely stated that "The Union has distributed four communications".  The Company, though knowing that it was certain MCOW employees who had distributed flyers on March 13 and March 14, used this occasion to attribute the contents of the flyers to the Union and accuse the Union of "misinformation".  In addition, the Company began in this flyer to unequivocally tell employees that "it would be the Company's position in collective bargaining that you will not be absorbed into an existing Verizon-California contract".  By such a stance, which the Company reiterated many many times in its campaign literature and e-mails during the entire time before the election, the Company threatened the employees that bargaining over this important issue would be fruitless.  The Company, by these repeated statements, told employees that, even before any bargaining had begun, that its position on this matter was fixed.  This conduct violated the intent of the NCE MOA as well as paragraphs 1 and 2.  The Union first objected to this on March 30, 2007, and continued to object throughout the campaign.

3.      From April 5, 2007 through April 19, 2007, the company, through its management team, wrote and distributed numerous "q's and a's" purporting to answer questions allegedly asked by MCOW employees.  The same "q's and a's" were distributed multiple times to all employees even though the alleged questions did not emanate from all the employees in the MCOW unit.  In these "q's and a's", the Company reiterated its false accusations against the Union for purportedly distributing flyers with misinformation as well as its statements concerning its position that employees would not be made part of the core contract.  In addition, within the "questions" purportedly submitted by employees, statements are incorrectly attributed to the Union and are incorrectly "answered" by the Company.  Further, the Company's "answers" to questions consistently suggest that any improvement to employees' wages, benefits and working conditions as a result of unionization are speculative while any detriment to them is likely.

4.      The Company failed on a timely basis to provide the Union and the TPN the list of names, etc. as provided in paragraph 6(2) of the NCE MOA.

Mr. Paul Gwaltney and
Louis M. Zigman, Esq.
April 24, 2007
Page 3 of 4

5.     From March 23rd forward, the Company prohibited the MCOW employees from using the Company's internal e-mail system for communicating with each other for other than job-related messages although, prior to the union organizing campaign, no such prohibition existed. By this conduct, the Company punished the employees as a result of the union organizing campaign.

6.     From April 10, forward, the Company prohibited bargaining unit employees from distributing literature about the election in the work area before employees began work. This conduct violated paragraphs 2 and 6 and the overall intent of the NCE MOA.

7.     The Company prohibited bargaining unit employees from discussing election-related matters on the work floor during work hours while management employees engaged in anti-union discussions during these same times and places. This violates the intent of the NCE MOA, as well as paragraphs 2 and 6.

8.     The Company failed to timely share with the Union its numerous communications to employees in violation of paragraphs 2 and 6 of the NCE MOA. The Union repeatedly objected to this practice.

9.     In addition to the Company's statements concerning its "position" against the placement of bargaining unit employees in the core contract, the Company on April 11, 2007 also told these employees that even prior to the start of any bargaining with the union that pension accruals for Coordinators would not continue after December 31, 2007. These statements led employees to believe that voting for the union was useless.

10.     On April 19 and April 20, on the eve and day of the election, management actively went from employee to employee to campaign against the union during work hours and on the work floor. This conduct violated paragraphs 2 and 6 as well as the intent of the NCE MOA. The Union protested this conduct.

11.     The above conduct evidences that:

    a)     The Company took an anti-union position and campaigned against the Union throughout the organizing time period prior to the election;

    b)     The Company advocated that employees should not vote for the Union;

    c)     The Company disparaged the Union throughout the organizing campaign;

Mr. Paul Gwaltney and
Louis M. Zigman, Esq.
April 24, 2007
Page 4 of 4

    d)      The Company denied reasonable access to the Union to fairly
              inform the employees of the consequences of their vote;

    e)      By these actions, the Company prevented the employees from
              making an informed decision free from coercion in the election in
              violation of the intent and express provisions of the NCE MOA.

As a result of all of the above, CWA respectfully requests that the results
of the election held on April 20, 2007 be set aside, that the above violations of
the NCE MOA be remedied by appropriate measures, and that a new election be
directed for the employees in the MCOW unit once the Company's violations of
the NCE MOA have been remedied so that a new election may be conducted in
an environment of neutrality, free of coercion.

CWA is filing these objections with the third party neutral, Mr. Louis
Zigman, within the seven days of the election, as set forth in the National Labor
Relations Act for elections conducted under the provisions of the Act.

CWA hereby submits the above disputes to Mr. Zigman as provided for in
the NCE MOA and asks that he proceed with the dispute resolution process set
forth in the NCE MOA including setting a hearing during which the parties may
have a full opportunity to present their positions and supporting factual
information and during which CWA will present evidence in support of its
objections to the election, and in support of its request for remedial relief and a
new election.

Sincerely yours,

Mark Bixler
Area Director

MB/mgl
OPEIU-3-AFL-CIO

c: Tony Bixler
   Gregg Gibson
   David Rosenfeld
   Judy Belsito
   Ed Sabol

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Verizon Services Organization Inc. | Communications Workers of America, AFL-CIO |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    88888<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)<br><br>JONES DAY<br>51 Louisiana Avenue, N.W.<br>Washington, D.C.  20001-2113 | ATTORNEYS (IF KNOWN) |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

● 3 Federal Question
(U.S. Government Not a Party)

○ 2 U.S. Government
Defendant

○ 4 Diversity
(Indicate Citizenship of
Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

○ **A.** *Antitrust*

☐ 410 Antitrust

○ **B.** *Personal Injury/*
*Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C.** *Administrative Agency*
*Review*

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
    Administrative Agency is Involved)

○ **D.** *Temporary Restraining*
*Order/Preliminary*
*Injunction*

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

○ **E.** *General Civil (Other)*    **OR**    ○ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
    defendant
☐ 871 IRS-Third Party 26
    USC  7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
    of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
    Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
    Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
    Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
    Exchange
☐ 875 Customer Challenge 12 USC
    3410
☐ 900 Appeal of fee determination
    under equal access to Justice
☐ 950 Constitutionality of State
    Statutes
☐ 890 Other Statutory Actions (if
    not administrative agency
    review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ **530 Habeas Corpus-General**<br>☐ **510 Motion/Vacate Sentence** | ☐ **442 Civil Rights-Employment**<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ **895 Freedom of Information Act**<br>☐ **890 Other Statutory Actions**<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ **152 Recovery of Defaulted Student Loans**<br>(excluding veterans) |

| ◉ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ **710 Fair Labor Standards Act**<br>☒ **720 Labor/Mgmt. Relations**<br>☐ **730 Labor/Mgmt. Reporting & Disclosure Act**<br>☐ **740 Labor Railway Act**<br>☐ **790 Other Labor Litigation**<br>☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)**<br>☐ **443 Housing/Accommodations**<br>☐ **444 Welfare**<br>☐ **440 Other Civil Rights**<br>☐ **445 American w/Disabilities-Employment**<br>☐ **446 Americans w/Disabilities-Other** | ☐ **110 Insurance**<br>☐ **120 Marine**<br>☐ **130 Miller Act**<br>☐ **140 Negotiable Instrument**<br>☐ **150 Recovery of Overpayment & Enforcement of Judgment**<br>☐ **153 Recovery of Overpayment of Veteran's Benefits**<br>☐ **160 Stockholder's Suits**<br>☐ **190 Other Contracts**<br>☐ **195 Contract Product Liability**<br>☐ **196 Franchise** | ☐ **441 Civil Rights-Voting**<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Declaratory judgment action under 29 USC Section 185 et seq. (Labor Management Relations Act) and 28 USC Section 2201 (Declaratory Judgment Act)

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____    Check YES only if demanded in complaint

JURY DEMAND:    YES ☐    NO ☐

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE  May 4, 2007    SIGNATURE OF ATTORNEY OF RECORD  *Gary M. Kesh*

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.