MARY K. O'MELVENY
STEPHEN KOSLOW
Communications Workers of America, AFL-CIO
501 3rd Street NW
Washington, D. C. 20001
Telephone 202.434.1234
Fax 202.434.1219

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| VERIZON SERVICES<br>ORGANIZATION INC., | ) No.    1:07 cv 00834 RWR<br>)<br>) |
| Plaintiff and<br>Counterdefendant, | )<br>)<br>) AMENDED ANSWER TO |
| v. | ) COMPLAINT AND<br>) AMENDED COUNTERCLAIM |
| COMMUNICATIONS WORKERS OF<br>AMERICA, AFL-CIO, | )<br>)<br>) |
| Defendant and<br>Counterclaimant. | )<br>)<br>) |

Defendant and Counterclaimant Communications Workers of America,

AFL-CIO, by and through its undersigned counsel, states as follows in answer to

the Complaint filed by Plaintiff Verizon Services Organization, Inc., and in support

of its counterclaim against Plaintiff.

With respect to the allegations titled "Nature of The Action" this Defendant

admits that the paragraph accurately describes in general the claims made by the

Plaintiff.

1.      As to the allegations contained in Paragraphs 1, 2, 3, 4, 5 and 6, Defendant

admits those allegations.

2.      As to the allegations contained in Paragraphs 7 through 15, Defendant

admits that these allegations generally describe the Memorandum of Agreement

entered into by the Plaintiff and the Defendant (the "MOA"). The MOA, however, is a written document and its terms are specifically stated therein. The MOA is attached as Exhibit 1 to the Complaint. To the extent that the MOA is inconsistent with the allegations of the Complaint, Defendant avers that the terms of the MOA would prevail.

3.    As to the allegations contained in Paragraphs 16 and 17, Defendant denies those allegations.

4.    As to the allegations contained in Paragraph 18, Defendant admits those allegations.

5.    As to the allegations contained in Paragraph 19, Defendant admits that in part Plaintiff has accurately quoted from a Decision issued in 2005 by the Third Party Neutral ("TPN"). Defendant otherwise denies the allegations of Paragraph 19.

6.    As to the allegations contained in Paragraphs 20, 21 and 22, Defendant denies that these allegations accurately describe the facts relating to what happened with respect to the election campaign. In fact, Plaintiff engaged in repeated activity intended to thwart and undermine the election process up to and including the day of the election. Plaintiff's conduct violated the MOA in various respects, as described in Exhibit 3 to the Complaint. Defendant avers, however, that the activities and events occurred during the course of the election campaign and their import are matters to be resolved by the TPN under the explicit terms of the MOA.

7.    As to the allegations of Paragraph 23, Defendant admits that a letter dated April 25, 2007 was sent, thus invoking the jurisdiction of the TPN to resolve the disputes raised in that letter. Defendant further admits that Exhibit 3 is that letter.

8.    As to the allegations of paragraph 24, Defendant admits that on May 4, Plaintiff sent a letter refusing to agree that the TPN had the authority to resolve the disputes raised in Exhibit 3. A copy of that letter of May 4, 2007, is attached as

Exhibit A to the Counterclaim.  Otherwise, Defendant denies the remaining allegations of Paragraph 24.

## COUNT ONE

9.      With respect to Count One, Defendant incorporates herein by reference the answers to Paragraphs 1 through 24 of the Complaint.

10.     Defendant denies the allegations in Paragraph 26.  To the contrary, Defendant avers that the dispute is plainly arbitrable by the third-party neutral under well-established principles of Federal Labor Law developed under 29 U.S.C. § 185, and under the broad dispute resolution procedure contained in Section 8 of Exhibit 1, the MOA.

11.     With respect to the allegation in Paragraph 27, Defendant respectfully requests that this Court enter the appropriate judgment compelling Plaintiff to submit the dispute raised in Exhibit 3 over the Plaintiff's conduct to the TPN for exclusive and binding resolution under the terms of the MOA.

WHEREFORE, Defendant requests that this Court enter a Declaratory Judgment that the matter is arbitrable, and, pursuant to the Counterclaim, direct that the Plaintiff, Verizon Services Organization, immediately submit the dispute described in Exhibit 3 to the TPN for binding and final resolution as required by MOA.  Defendant furthermore requests that this Court grant such other and further relief as this Court deems just and proper.

## COUNTERCLAIM

1.      Counterclaimant incorporates by reference the allegations of Paragraphs 1 through 6 of the Complaint.  Jurisdiction also exists pursuant to 28 U.S.C. § 1337.

2.      In 2007, Counterclaimant conducted an election campaign at the Long Beach MCOW facility.  An election was held on April 20, 2007 and the Third-

Party Neutral ("TPN") issued a vote count indicating that CWA lost the election.

3.    On April 25, 2007, Plaintiff sent a letter to the Counterdefendant and the TPN requesting an arbitration hearing to address the conduct by the Counterdefendant during the course of the election campaign which was in violation of the MOA.  That letter is attached as Exhibit 3 to the Complaint.

4.    Thereafter, on May 4, the Counterdefendant notified Counterclaimant and the TPN that it would not agree to arbitrate the dispute referred to in Exhibit 3, asserting that it was not substantively arbitrable.  This notification was set forth in a letter dated May 4, 2007, which is attached as Exhibit A to this Counterclaim. Counterdefendant has refused to submit the dispute described in Exhibit 3 concerning the conduct of the election described above to the TPN for resolution.

5.    The arbitration procedure set forth in the MOA provides for "Dispute Resolution," and encompasses all "[q]uestions or disputes during the course of an organizing effort...."  The MOA also states that "[t]he parties agree that the process set forth herein shall be the exclusive means for resolving disputes covered by this dispute resolution process...." Section 8 of Exhibit 1.

6.    The disputes raised about the conduct of Counterdefendant during the election process including up to the day of election clearly fall within the category of disputes which the TPN is empowered to resolve under the terms of the MOA.

4

Wherefore Counterclaimant requests that this Court issue an Order directing that Counterdefendant submit immediately to the TPN, the dispute described in Exhibit 3. Counterclaimant furthermore seeks such other and further relief as this Court deems just and proper including attorney's fees and costs.

Dated: May 17, 2007

By: /s/Stephen Koslow

STEPHEN KOSLOW
DC BAR NO. 424700

MARY K. O'MELVENY
D.C. BAR NO. 418890

501 3rd Street NW
Washington, D. C. 20001
Telephone 202.434.1234
Fax 202.434.1219

DAVID A. ROSENFELD, Bar No. 058163
WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501-1091
Telephone 510.337.1001
Fax 510.337.1023

Attorneys for Defendant and Counterclaimant
COMMUNICATIONS WORKERS OF
    AMERICA, AFL-CIO,

5

## CERTIFICATE OF SERVICE

I hereby certify that on the 17h day of May, 2007, a copy of the foregoing

Amended Answer to Complaint and Amended Counterclaim was filed

electronically. Notice of this filing will be sent to all parties by operation of the

Court's electronic filing system:

_____/s/Stephen Koslow_____

Attorney for Defendant and
Counterclaimant

**EXHIBIT A**

**VERIZON'S 5/4/07 LETTER TO THE TPN**

**No.  1:07 cv 00834 RWR**

# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017-6702
TELEPHONE: 212-326-3939 • FACSIMILE: 212-755-7306

Direct Number: (212) 326-3649
wgoldsmith@jonesday.com

May 4, 2007

BY FACSIMILE (310) 550-8439/ VIA E-MAIL ZIGGYJUDGE@AOL.COM

Louis M. Zigman, Esq.
473 South Holt Avenue
Los Angles, CA 90048

Dear Mr. Zigman:

This is to briefly explain and expressly reserve Verizon's objection to the substantive arbitrability of the allegations set forth in the April 25, 2007 letter from the Communications Workers of America ("CWA"), and to respectfully request that the TPN proceed no further in this matter. Simply stated, post-election objections are not within the jurisdiction of the Third Party Neutral ("TPN") under the Memorandum of Agreement Between The Verizon/GTE Companies and Communications Workers of America (CWA) – Neutrality and Consent Election ("MOA"). CWA could have referred to the TPN any grievances pertaining to the organizing campaign at the Long Beach MCOW before the voting began and certainly before the results of the voting were announced by the TPN. If any of its claims were found to have merit, the TPN could have suspended the campaign or election in order to address any alleged violations — precisely the procedure followed by the TPN's predecessor, John C. Wells, in 2005. Instead, the CWA waited until it learned the results of the balloting, found that it had lost, and now seeks to have the TPN craft an NLRB-type post-election objection procedure to which the parties have not agreed.

The TPN lacks jurisdiction to consider the union's objections for the following reasons, among others. First, the plain language of the MOA provides the TPN no authority to address the parties' conduct after the ballot count begins. The 2005 TPN award interpreted and applied the MOA in exactly that way. See Attachments ("Att.") A (MOA) & B (2005 Award). More specifically, the TPN's 2005 award — signed by the CWA — stated that the TPN "retain[ed] jurisdiction through the …. election," not at any point after an election has been conducted. Att. B, at 2.

In its letter, CWA effectively concedes that its assertion of post-election objections has no basis in the MOA. The CWA acknowledges that it is "filing these objections …within seven days of the election, as set forth in the National Labor Relations Act for elections conducted under the provisions of the Act." However, the MCOW election was not conducted under the NLRA but under the parties' MOA, which makes no provision whatsoever for the TPN's authority to hear post-election objections. While the MOA spells out in detail procedures for dispute resolution, it does not mention any post-election procedures or TPN jurisdiction over them. Indeed, the MOA specifically disavows NLRB practice, see Att. A, Introduction-¶3, ¶6,

JONES DAY

Louis M. Zigman, Esq.
May 4, 2007
Page 2

¶8(f), in favor of the election process provided by the MOA, except where an NLRB procedure is expressly adopted.

These are sophisticated parties who know how to incorporate NLRB procedures and how not to. Where the parties chose to incorporate limited elements of NLRB procedure, they were specific in doing so. Thus, the parties agreed to follow NLRB rules with respect to unit determinations. Att. A, ¶ 8(d). More tellingly, the parties agreed in the MOA to employ the TPN to "resolve any issue concerning challenged ballots in similar fashion to the National Labor Relations Board (NLRB) process," Att. A, ¶3(d), but made no provision for post-election objections. "Challenged ballots" is a term of art referring to pre-election disputes as to the eligibility of voters. A challenge to the eligibility of any voter must be made *before* that voter's ballot is placed in the ballot box.

As noted above, the MOA incorporates NLRB law and procedures in only two respects: it adopts NLRB procedures for resolving challenged ballots (Att A, ¶3(d); and, it refers to NLRB substantive law as guidance with respect to the composition of the bargaining unit (Att A, Introduction-¶3, ¶8(d). Otherwise, it creates its own procedures. The complete absence of any MOA reference to NLRB or any other post-election process makes perfect sense here. The parties wanted an expeditious election process giving the TPN authority, as exercised in 2005, to resolve grievances and provide any remedies *before* balloting began. Hence, the parties have the right under the MOA to bring a pre-election dispute to the TPN on three days' notice and to get the dispute resolved before balloting begins. Att. A, ¶8(b). Underscoring the limitation that the objective of speedy elections imposed, the TPN defined the duration of his continued jurisdiction in 2005, which the parties signed, as follows: "the TPN will retain jurisdiction through the cooling off period and campaign and election to immediately resolve any disputes the parties are unable to resolve. The party with the dispute is responsible to promptly refer any matter after a good faith effort is made to resolve the matter."

Moreover, as the CWA knows full well, it had every opportunity to assert whatever campaign grievances it purported to have during the campaign. Nevertheless, apparently counting on an election win, CWA made the strategic decision to forego the procedures of the MOA. Indeed, when the CWA representative at the pre-election conference stated that the union might file objections to the election, the Verizon representative indicated that the TPN was limited to the dispute resolution process in the MOA and that, other than possibly a challenge to the balloting process itself, it would be too late to challenge campaign conduct. Nonetheless, CWA consciously chose to roll the dice.

CWA's belated presentation to the TPN of post-election grievances directly contravenes the prior agreement on TPN jurisdiction providing that "[t]he party with the dispute is responsible to promptly refer any matter after a good faith effort is made to resolve the matter." Att. B at 2. By admission in its April 27 letter, CWA complains of conduct dating back to March 27, 2007, 24 days *before* the election. CWA also admits that it "began analyzing" management conduct during the campaign and complained to Verizon about such conduct "throughout the campaign," even though CWA failed to bring to the TPN any alleged violations during this time. Att. C (CWA "Update" flyer emailed on May 1). To fall within the TPN's jurisdiction, all of the

JONES DAY

Louis M. Zigman, Esq.
May 4, 2007
Page 3

grievances concerning the conduct of the organizing campaign should have been asserted to the TPN and decided before the votes were cast.

In addition, looking to the ultimate intent of the parties to the MOA, the TPN clearly has no jurisdiction to address pre-election conduct after employees have cast their ballots.  The intent of the parties was to "establish, encourage and nurture an environment *during a union organizing drive* that will allow employees to choose whether or not to become represented in a fully informed and uncoerced manner."  Att. A, ¶ 1 (emphasis added).  And, the purpose of the dispute resolution process is to resolve "disputes arising during the course of an organizing effort" (Att A, ¶8(a).  The intent was not to replicate the prolonged Board process of a post-election dispute resolution mechanism.  The ability to bring complaints immediately to the TPN is the antithesis of the NLRB's *post hoc* process, which CWA and other unions regularly decry.  Nor would such a process make any sense in light of the express directive of the MOA requiring an "expeditious" campaign and the TPN's authority to intervene to address grievances and remedy any violations before balloting begins.  Att. A, ¶4.

Thus, the parties crafted a system of in-campaign dispute resolution.  This intent of having the parties resolve disputes *as they arose* during the campaign would be completely frustrated if either party were allowed to save its formal objections until it saw whether it prevailed in the election.  Instead of diligently asserting breaches and having them corrected in order to safeguard an informative, non-coercive campaign environment, parties would have every incentive to game the system by awaiting the election outcome purely as a last ditch strategic maneuver to turn around an election loss.

This is, of course, precisely what happened here — CWA gambled, but lost.  The post-election objections raised by CWA are a transparent attempt by the union to have it both ways.  There can be no question that had CWA prevailed, these same supposedly serious objections never would have been asserted.  Indeed, CWA is soliciting more "evidence" for new allegations even today, 12 days after the election.  Att. C.  This is a far cry from the in-campaign dispute resolution process the parties intended.

Finally, the rules of the election contest have to be clear.  If the TPN were now to hold that he has authority to entertain post-election objections, this would be extremely prejudicial to Verizon.  Verizon believed that it had to abide by the results of the election.  Verizon never assumed it could "bundle" the multiple CWA breaches of the MOA, sit on them until the end of the election, and spring them on CWA and the TPN if it lost the election.  Unlike CWA's unprincipled approach to the process, Verizon played by the rules.[1]

---

[1] Were Verizon allowed by the MOA to stockpile evidence for a post-election challenge, it could have collected evidence of CWA violations.  Even now Verizon could show a number of CWA violations, e.g., violations of its non-disparagement and non-misleading obligations by guaranteeing the results of bargaining, accusing the company's Director of Labor Relations of using "unscrupulous tactic[s]" and directing "bigotry" at employees, and urging a union vote "before any more of your benefits are taken away" by the company.  Att's. D 1-4 (various flyers) & E (company response by Labor Relations Director Paul Gwaltney).

JONES DAY

Louis M. Zigman, Esq.
May 4, 2007
Page 4

For the foregoing reasons, Verizon believes that the TPN lacks jurisdiction to consider the post-election objections under the MOA. Based on the strength of those convictions, Verizon filed a federal district court action today seeking a ruling that the union's objections are not substantively arbitrable. Thus, the parties should not be required unnecessarily to expend time and resources proceeding before the TPN at this time. If that were to happen, Verizon would again specifically reserve its right to have the federal courts determine the substantive arbitrability of the CWA's claims – and, as noted above, we believe it is clear beyond cavil that the claims are not substantively arbitrable. If the TPN were to proceed and then conclude or suggest otherwise, Verizon would promptly move to set aside the award. In addition to the obvious waste of resources that would be involved, this would only further prolong the consent election process already prolonged by CWA - a process the parties specifically agreed was to be handled "expeditiously." Accordingly, the TPN should not take any action in connection with this matter until there is a final ruling from the courts.

By copy of this letter to Mr. Gwaltney, I am asking Mr. Gwaltney to immediately forward a copy to Mr. Bixler of the CWA.

Very truly yours,

Willis J. Goldsmith

Attachments

cc: Mr. Paul Gwaltney