UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

```
-------------------------------------------------------X
VERIZON SERVICES                        :
ORGANIZATION INC.,                      :
              Plaintiff,                :
                                        :   Civil Action No. 1:07 cv 00834 RWR
v.                                      :
                                        :
COMMUNICATIONS WORKERS OF               :
AMERICA, AFL-CIO,                       :
                                        :
              Defendant.                :
-------------------------------------------------------X
```

## JOINT RULE 16.3 STATEMENT

Pursuant to this Court's July 6, 2007 Order, and Local Rule 16.3 of the Local Rules for the United States District Court for the District of Columbia, Verizon Services Organization Inc. ("Plaintiff or "Verizon") and Communications Workers of America, AFL-CIO ("Defendant" or "CWA"), through their undersigned counsel, hereby submit the following Statement:

**1.      Brief Statement of the Case and Statutory Basis for All Causes of Action**

The parties were unable to agree on a joint statement of the case; accordingly, each party's respective statement is set forth separately below.

**(a)      Plaintiff's Statement of the Case**

Verizon and CWA have entered into a Memorandum of Agreement ("MOA") concerning CWA's attempt to organize certain Verizon employees. The MOA requires certain disputes that arise during the course of an organizing effort to be submitted to arbitration before a designated Third Party Neutral. On April 20, 2007, CWA lost an election at Verizon's Long Beach MCOW facility. On April 24, 2007, CWA sent a letter to Verizon and the Third Party Neutral requesting to arbitrate CWA's objections to certain alleged conduct by Verizon during the campaign.

On May 4, 2007, Verizon filed this action under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (2005), *et. seq*., and the Declaratory Judgment Act, 28 U.S.C. § 2201 (2005), seeking a judgment that CWA's post-election objections are not substantively arbitrable under the MOA. On May 16, 2007 CWA filed its Answer, as well as a counterclaim seeking an order to compel arbitration of CWA's objections. By asserting its counterclaim, CWA evinced its agreement that this is a dispute about substantive arbitrability, which is properly addressed to this Court.

### (b)    Defendant's Statement of the Case

This suit concerns Verizon's challenge to the arbitrability of a dispute between the parties arising under their Memorandum of Agreement ("MOA"), which is Exhibit 1 to the Complaint. That MOA governs organizing efforts by CWA and provides for a procedure for resolving disputes which may arise during such organizing efforts without invoking the National Labor Relations Act or involving the federal courts. CWA invoked that MOA in 2007 in the course of organizing Plaintiff's employees at a Verizon location in Long Beach, California known as the MCOW facility. CWA contends that Verizon, during the course of the election campaign, violated the neutrality guarantees of the MOA. The merits of those claims are not before this Court; rather, the sole issue before this Court is whether the Arbitrator, or Third Party Neutral as he is described in the MOA, has jurisdiction to hear and determine CWA's claims that Verizon violated the MOA's neutrality provisions in the course of CWA's efforts to organize Verizon's employees at the MCOW facility. Verizon does not dispute that the MOA empowers the Arbitrator to resolve such claims if presented to him prior to an election conducted pursuant to the MOA; it here contends that the Arbitrator lacks authority to resolve such claims when raised after an election is held. In essence, Verizon is challenging the Arbitrator's authority on

procedural grounds, i.e., it contends CWA waited too long to present its claims of neutrality violations to the Arbitrator. Because it has long been settled that procedural objections to arbitrability are exclusively for the arbitrator to resolve, CWA contends that Verizon's challenge to the Arbitrator's authority to hear and determine its neutrality objections are frivolous.

Indeed, the Arbitrator (Louis M. Zigman) has already addressed and rejected Verizon's challenge to his authority to resolve CWA's neutrality objections. (See CWA's Exh. 1, Letter from Arbitrator Zigman to Verizon counsel, dated May 26, 2007). He interpreted the MOA to give him jurisdiction to hear post-election objections to Verizon's conduct during the organizing campaign. Moreover, the hearing before the Arbitrator on CWA's objections is already underway. Four days of hearing were held on August 1, 2, 3 and 9, and the hearing is set to resume on October 23 and continue October 24, 25 and 26, 2007. The MOA provides that the Arbitrator will render his decision when the hearing concludes, without the benefit of briefs from the parties.

Finally, Verizon's request that this Court enjoin the arbitration is precluded by the Norris-LaGuardia Act.

  2. **Rule 16.3(c) matters**
  **(1)** **Whether the case is likely to be disposed of by dispositive motion; and whether, if a dispositive motion has already been filed, the parties should recommend to the court that discovery or other matters should await a decision on the motion**.

The parties agree that this case should be disposed of by dispositive motion. To date, no dispositive motions have been filed.

  **(2)** **The date by which any other parties shall be joined or the pleadings amended, and whether some or all the factual and legal issues can be agreed upon or narrowed.**

3

The parties agree that all parties shall be joined, and pleadings amended, by September 26, 2007.

**(3)     Whether the case should be assigned to a magistrate judge for all purposes.**

The parties do not seek appointment of a magistrate judge.

**(4)     Whether there is a realistic possibility of settling this case.**

The parties agree that there is not a realistic possibility of settling this matter short of a dispositive ruling from this Court.

**(5)     Whether the case could benefit from the Court's alternative dispute resolution (ADR) procedures.**

The parties agree that it is unlikely that this matter could benefit from participation in the Court's alternative dispute resolution procedures, or some other form of ADR.

**(6)     Whether the case can be resolved by summary judgment or motion to dismiss; dates for filing dispositive motions and/or cross-motions, oppositions, and replies; and proposed dates for a decision on the motions.**

The parties agree that this matter should be resolved by dispositive motion. The parties' proposed scheduling order, attached hereto, proposes that such motions be filed on or before December 21, 2007, with any opposition briefs due on or before January 11, 2008, and any reply briefs due on or before January 18, 2008.

**(7)     Whether the parties should stipulate to dispense with the initial disclosures required by Fed. R. Civ. P. 26(a)(1), and if not, what if any changes should be made in the scope, form, or timing of those disclosures.**

The parties agree to dispense with the disclosures contemplated by Rule 26(a)(1).

**(8)     The anticipated extent of discovery, how long discovery should take, what limits should be placed on discovery; whether a protective order is appropriate; and a date for the completion of discovery, including answers to interrogatories, document production, requests for admissions, and depositions.**

The parties were unable to agree about the scope of discovery or about a proposed discovery schedule. Each party's respective views on discovery are set forth separately below.

Verizon believes that only limited discovery is necessary and that discovery should be restricted to the matter that the parties have placed before the Court, i.e., whether CWA's post-election objections are substantively arbitrable under the parties' MOA. Verizon proposes that each party be permitted to pose to the opposing party as many as ten interrogatories, ten document requests, and ten requests for admission. Verizon further proposes that each party be permitted to take as many as three depositions of the opposing party (or witnesses within the control of the opposing party). Finally, Verizon proposes that each party be permitted to serve as many as four subpoenas duces tecum on third parties, and to seek as many as four third-party depositions. Assuming discovery is permitted, the attached proposed discovery schedule proposes a deadline of November 30, 2007 for the completion of discovery.

CWA contends that discovery is unnecessary as the undisputed facts suffice for the Court to rule, as a matter of law, that Verizon's claims are unfounded and insupportable. Moreover, for the following reasons, CWA submits that the interests of judicial economy will best be served by the Court ordering this case held in abeyance pending issuance of the Arbitrator's decision on the merits of CWA's neutrality objections. First, while settlement of this suit is not presently possible, issuance of the Arbitrator's decision could result in the parties' being more open to a voluntary resolution. Second, the Arbitrator's determination of the dispute and his factual findings will provide a clearer and more complete backdrop for the Court's ruling on the issue before it. Finally, the Arbitrator's ruling and finding may obviate, even in Verizon's view, the need for any discovery in this case.

> **(9)    Whether the requirement of exchange of expert witness reports and information pursuant to Fed. R. Civ. P. 26(a)(1), should be modified, and whether and when depositions of experts should occur.**

The parties agree that expert testimony is unnecessary.

> **(10)   In class actions, appropriate procedures for dealing with Rule 23 proceedings, including the need for discovery and the timing thereof, dates for filing a Rule 23 motion, and opposition and reply, and for oral argument and/or an evidentiary hearing on the motion and a proposed date for decision**.

This matter has not been brought as a class action.

> **(11)   Whether the trial and/or discovery should be bifurcated or managed in phases, and a specific proposal for such bifurcation.**

Because the parties agree that this case should be disposed of by dispositive motion, the parties agree that bifurcation of discovery and trial appears at this point to be unnecessary.

> **(12)   The date for the pretrial conference (understanding that a trial will take place 30 to 60 days thereafter).**

Because the parties agree that this case should be disposed of by dispositive motion, the parties agree that it appears unnecessary at this point to set a date for a pretrial conference.

> **(13)   Whether the Court should set a firm trial date at the first scheduling conference or should provide that a trial date will be set at the pretrial conference from 30 to 60 days after that conference**.

Because the parties agree that this case should be disposed of by dispositive motion, the parties agree that it appears unnecessary at this point to set a trial date.

> **(14)   Other Matters Appropriate for Consideration**

At this time, the parties have no other matters for the Court's consideration.

Dated:  August 23, 2007

Respectfully submitted,

| | |
|---|---|
| /s/  Thomas M. Beck | /s/  Stephen Koslow |
| Willis J. Goldsmith (D.C. Bar No. 945956) | Mary K. O'Melveny |
| Thomas M. Beck (D.C. Bar No. 437680) | Stephen Koslow |
| JONES DAY | Communications Workers of America, AFL-CIO |
| 51 Louisiana Avenue, N.W. | |
| Washington, D.C.  20001-2113 | 501 3rd Street N.W. |
| Telephone:  (202) 879-3939 | Washington, D.C.  20001 |
| Facsimile:  (202) 626-1700 | Telephone:  (202) 434-1234 |
| | Facsimile:  (202) 434-1219 |
| | |
| Attorneys for Plaintiff Verizon Services Corporation Inc. | Attorneys for Defendant Communications Workers of America, AFL-CIO |

## CERTIFICATE OF SERVICE

     I hereby certify that on August 23, 2007, a copy of the foregoing Joint Rule 16.3 Statement was electronically filed.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

                                                 /s/ Tonya Osborne

# EXHIBIT 1

CWA EXHIBIT 1

**Louis M. Zigman**, Esq.
473 South Holt Avenue
Los Angeles, CA 90048
(310) 556-3748 – fax (310) 550-8439
email: ziggyjudge@aol.com

May 26, 2007

Via Email and First Class Mail

To:         Willis J. Goldsmith, Esq.
            Mark Bixler
            Paul Gwaltney

From;       Lou Zigman, Esq.

                    Re: Request for Order Compelling Arbitration
                        (Alleged Violations of the National Agreement
                        on Neutrality and Consent Election)

Gentlemen:

   After having considered the positions of the parties and after my review of the National Agreement (hereinafter the "NCE MOA"), and in noting that I am making my determination based upon my reading of the NCE MOA along with having considered the contentions of the parties, I find and conclude that the arguments and contentions of the union are *persuasive* to the effect that I have the authority and the responsibility to hear and decide the union's allegations that the employer violated the terms of the NCE MOA with respect to its conduct prior to the consent election.

   In this regard, I initially considered the union's arguments that as the third party neutral I was given that authority to consider the union's objections under the NCE MOA.

   After considering the union's arguments, I find that the union's arguments are presumptively persuasive for a number of reasons.

   (1) The union has alleged violations of the NCE MOA.

   (2) The last sentence in Paragraph 2 states:

   "Allegations of violations of these provisions will be handled via the dispute resolution process contained in this Agreement."

   (3) Paragraph 8 describes the dispute resolution procedure.

   Paragraph 8(e) sets forth the procedure to be followed, i.e. that the parties shall be given a full opportunity to present their positions.

1

Paragraph 8(f) provides that the dispute resolution process shall be the exclusive means for resolving these disputes.

As such, I found the union's arguments persuasive that a hearing should be scheduled to hear their allegations.

While I note that the company asserts that the parties did not intend to allow post election objections and therefore that I should deny the union's request for a hearing, I didn't find the company's arguments persuasive.

The company's arguments are not persuasive because, contrary to the company's argument, the language in the NCE MOA does not preclude post election proceedings. More particularly, there is no specific language in this agreement that says that post election objections cannot be heard. There is also no specific language in the agreement that specifically says that violations as referenced in paragraph 2 will be barred if they are raised after the counting of the ballots.

While the company has made many arguments which the company asserts demonstrates that the parties mutually intended to bar claims of NCE MOA violations if raised after the counting of the ballots, those arguments are essentially based on the company's interpretation of the different provisions in the NCE MOA – none of which specifically bars the raising of contractual violations following the count of ballots.

It is a rather well accepted principle in labor/management contractual disputes that procedural waivers/forfeitures of claims, i.e. the barring of grievances, must be shown by clear and unambiguous language.  And, as noted above, there is no such language.

While the company has made a collection of arguments, some of which have some degree of logic, the fact remains that the language in paragraph 2 specifically states that allegations of violations of the provisions of the NCE MOA will be handled through the dispute resolution process and paragraph 8(e) gives the TPN authority to hear and decide those issues.

And, as noted above, there is no specific language in the NCE MOA which says that violations of the agreement cannot be raised after the ballot count.

Based on the contractual language above, I found the union's arguments *presumptively persuasive* that allegations of violations of the NCE MOA purportedly committed during the course of the organizing effort are subject to the dispute resolution procedure.

And, since the union alleges that the violations occurred prior to the election, i.e. during the course of the organizing effort, I again found the union's arguments presumptively persuasive that the allegations by the union in its objections to the election falls within the language of the parties' agreement.

And finally, inasmuch as Paragraph 8(f) provides that this process shall be the "exclusive means" for resolving such disputes, I found the union's arguments *presumptively persuasive* that I have the authority and responsibility for hearing the allegations (dispute) and making a determination on the merits of those allegations.

Having found that the union sustained its burden of establishing that I have jurisdiction over the dispute, I considered in more detail the arguments made by the company that I do not have jurisdiction.

In this regard, I note the company's contention that these allegations are not properly before me because they were raised AFTER the election (ballot count). In making that argument the company has raised a number of reasons.

Initially, the company points to the language in 8 (a) and (b) which provides for an expeditious manner for resolving their disputes. While I agree that paragraphs 8(a) and 8(b) provides for an expeditious manner for resolving disputes and while it is evident that one of the important goals of the NCE MOA is to have an expeditious organizing campaign and election, nevertheless the company's argument that the union is *barred* from raising these issues after the ballot count is *not persuasive*.

That argument is not persuasive for a number of reasons.

The argument that the parties *intended and agreed* to bar disputes raised after the ballot count is not persuasive because as noted above, the NCE MOA does not specifically bar such disputes. In other words, there is no language which specifically says words to the effect that: "neither party may file objections to the election after the counting of the ballots," or that "violations of the agreement occurring before the election but not raised until after the election are untimely and barred and/or are not subject to the dispute resolution process."

While the company argues that the language in the NCE MOA "is clear" and clearly demonstrates that these "disputes" are indeed barred, the company's characterization of the intent of the parties is essentially gleaned from the company's own interpretation" and the company's own "characterization" of how it reads and interprets the different provisions of the NCE MOA.

Again, while the company states that "the TPN has no authority to address the parties' conduct after the ballot count begins," I note that there is no specific language in the NCE MOA that specifically precludes the TPN from addressing issues raised <u>after</u> the ballot count.

While I agree that the NCE MOA does not specifically say that the TPN has the authority to hear the allegations raised by the union, I found the union's arguments more persuasive than the company's arguments because the language in paragraph 2 clearly covers violations of the agreement and also because other disputes under paragraphs 8(a) and 8(e) are not limited to by any time constraints.

As noted above, and as a further basis for finding the union's arguments more persuasive than the company's arguments, I note that it is a rather widely accepted principle when construing contractual language in labor/management disputes that unless there is specific language providing for a waiver of claims that such waivers/forfeiture of claims must be shown by clear and unambiguous language. Examples of such forfeitures are when parties specify that if grievances are not filed within a particular number of days that the grievances will be considered null and void and barred from the grievance procedure. As noted above, the NCE MOA does not include language which specifically bars disputes from being raised after the ballot count.

3

Interestingly, the parties did place a "limitation" on disputes to be resolved in their dispute resolution procedure and the limitation requires that the dispute must have arisen *during the course of the organizing effort*. And, as noted above, the union asserts that the violations did arise during the organizing effort.

While I agree that one can argue that because the parties agreed to follow certain NLRB procedures and by not specifically incorporating NLRB objection procedures that the parties did not intend to allow post election challenges to the election, that argument is *not persuasive* because (1) there is no specific language saying that violations raised after the ballot count will be barred, and in light of the fact that paragraph 2 does specifically allow the union to file claims of violations of the NCE MOA through the dispute resolution procedure – a procedure that does not impose a time constraint on those claims.

Turning next to the company's contention that the 2005 TPN: "award interpreted and applied the MOA in exactly the same way," I did not find that characterization persuasive. The TPN's "award" and the reference to his jurisdiction is in one sentence to wit:

"John Wells will retain jurisdiction through the cooling off period and campaign <u>and election</u> to immediately resolve any disputes the parties are unable to resolve…" (My emphasis).

I note that nowhere in his ruling did TPN Wells say that he had no jurisdiction to resolve disputes that may occur before the ballot count and be raised after the count.

The company's contention that TPN Wells "retained jurisdiction through the election… <u>not</u> at any point <u>after</u> an election has been conducted," is simply the *company's interpretation* of a one sentence ruling. (My emphasis)

As such, the argument based on the 2005 TPN's ruling is not persuasive.

That argument and the reliance on the 2005 TPN ruling is also not persuasive because in the parlance of labor/management relations it is widely held that jurisdiction in an organizing election customarily continues to apply to allegations of misconduct by either party before the election that may have affected the outcome of the election.

And, pursuant to that generally accepted principle of considering misconduct by either party in terms of the propriety of the election, along with the language in paragraph 2 along with the broad language in paragraphs 8(a) and 8(e) of the word dispute, as well as the absence of specific waivers, I agree that the union's interpretation of the NCE MOA is consistent not only with the language in this agreement but also with generally accepted practices in the labor management community.

Turning to the next argument by the company that to allow post election challenges would frustrate the entire election process, I again did not find that argument persuasive.

While I agree that there is logic in the company's argument that the parties provided in paragraphs 8(a) and 8(b) for a procedure to identify and to try to resolve disputes during the organizing effort expeditiously with short time limits that doesn't mean that the parties agreed to bar any disputes and/or claims of violations of the NCE MOA simply because they provided for the

4

mechanism in paragraphs 8(a) and 8(b). *That "bar" is merely supposition based upon the company's interpretation of that language and other language in the NCE MOA. And because there is no clear bar written into these provisions, one cannot be inferred.*

Additionally, as to the company's contention that the union's interpretation would be extremely prejudicial to the parties and to the employees themselves because of the parties' goal of having an expeditious election process, I did not find that argument persuasive given the fact that the *primary purpose* of the election agreement (paragraphs 1 and 2) is to guaranty employees' a freedom of choice and a process free from coercive conduct. And, as noted before, in the absence of specific language demonstrating that the parties intended to preclude objections based upon purported violations of the agreement, I found the union's arguments persuasive that the NCE MOA does allow for the adjudication of purported violations to be raised after the ballot count - and furthermore that the arguments of the union are actually more consistent with the primary goal of these parties than the argument based on the expeditious nature of the process.

The company argues that other provisions in the NCE MOA, i.e. paragraphs 3, 6 and 8(f) demonstrate that since the parties specifically agreed to the inclusion of certain NLRB procedures and did not include NLRB post election objections that the objections filed by the union were not to be permitted.

While I have already dealt with this argument above, I also note that none of those paragraphs makes any reference to the union's right to raise objections after the election and more specifically, as noted throughout my analysis, none of the provisions specifically bars the union from doing so.

Without going into detail, I note that the company's arguments based on Paragraphs 1 and 4 were also not persuasive.

And finally, I do not find the company's argument persuasive that I should await the outcome of its motion filed in federal court seeking to overturn the union's objections.

In this regard, I note that I have been given the authority for resolving questions or disputes that arose during the organizing effort. Furthermore, since the union has raised violations of the NCE MOA it is my responsibility to interpret the parties' agreement and I have.

Inasmuch as I find the union's arguments persuasive that I have jurisdiction and the authority under the parties' NCE MOA to resolve the particular disputes raised by the union in its objections filed on April 25, 2007 and inasmuch as the language in paragraph 8(e) is very specific in setting forth the exclusive authority of the TPN to resolve disputes subject to this resolution process, and in further noting that under paragraph 8(e) that the parties agreed that neither party shall utilize any other forum, e.g. federal court, I do not find the company's arguments persuasive that I should decline to take any action until there is a final ruling from the courts.

For all of the reasons stated above, and in light of any other arguments raised by the company but not specifically addressed above, I hereby order and direct that a hearing be held to consider the union's allegations that the company violated the provisions of the NCE MOA with respect to the conduct of the election.

5

My availability to convene the hearing is as follows:

June 4, 5, 6, 9, 13 - possibly June 14, 15

July 9

Kindly let me know which days you are available or alternative dates if none of the aforementioned are possible.

> Respectfully submitted,
>
> Louis M. Zigman, Esq.
> Third party Neutral

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

---------------------------------------------------X
VERIZON SERVICES                    :
ORGANIZATION INC.,                  :
        Plaintiff,                :
                                  :    Civil Action No. 1:07 cv 00834 RWR
v.                                  :
                                  :
COMMUNICATIONS WORKERS OF           :
AMERICA, AFL-CIO,                   :
                                  :
        Defendant.                :
---------------------------------------------------X

**PROPOSED SCHEDULING ORDER**

The Parties hereby respectfully propose that the following schedule govern this matter:

| | |
|---|---|
| Rule 26(a)(1) Initial Disclosures: | n/a |
| Joinder of Parties/Amendment of Pleadings | September 26, 2007 |
| Close of Discovery | November 30, 2007 |
| Dispositive Motions: | December 21, 2007 |
| Opposition Briefs: | January 11, 2008 |
| Reply Briefs: | January 18, 2008 |

SO ORDERED:

_____
RICHARD W. ROBERTS
United States District Judge