UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

```
-------------------------------------------------X
VERIZON SERVICES                       :
ORGANIZATION INC.,                     :
              Plaintiff,               :
                                       :    Civil Action No. 1:07 cv 00834 RWR
v.                                     :
                                       :
COMMUNICATIONS WORKERS OF              :
AMERICA, AFL-CIO,                      :
                                       :
              Defendant.               :
-------------------------------------------------X
```

## VERIZON SERVICES ORGANIZATION INC.'S NOTICE OF FILING EXHIBITS IN SUPPORT OF MOTION TO RECONSIDER THE STAY OF DISCOVERY

Plaintiff and Counterclaim Defendant, Verizon Services Organization Inc. ("Verizon"), through its undersigned counsel, hereby submits this Notice of Filing Exhibits in support of its Motion to Reconsider the Stay of Discovery. Verizon is filing the Notice because the attached exhibits were inadvertently omitted from the Declaration of Donald B. Haller, which was provided in support of the Motion to Reconsider the Stay of Discovery Verizon filed on November 21, 2007. Verizon has already provided copies of these exhibits to Defendant and Counterclaim Plaintiff, Communications Workers of America, AFL-CIO.

Dated: November 27, 2007

                                        Respectfully submitted,

                                        _/s/ Thomas M. Beck_
                                        Willis J. Goldsmith (D.C. Bar No. 945956)
                                        Thomas M. Beck (D.C. Bar No. 437680)
                                        JONES DAY
                                        51 Louisiana Avenue, N.W.
                                        Washington D.C. 20001-2113
                                        Phone: (202) 879-3939
                                        Fax: (202) 626-1700

                                        Attorneys for Plaintiff Verizon
                                        Services Organization Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of November 2007, a copy of the foregoing Notice of Filing Exhibits in Support of Motion to Reconsider the Stay of Discovery, was electronically filed. Notice of the filing will be sent to all parties by operation of the Court's electronic filing system.

                                                  /s/ Thomas M. Beck
                                    Attorney for Plaintiff Verizon Services Organization Inc.

# EXHIBIT 1 TO HALLER DECLARATION

Other Agreements

## (SS) MEMORANDUM OF UNDERSTANDING REGARDING NEUTRALITY AND CONSENT ELECTION

This agreement between CWA, IBEW and AT&T supersedes all previous agreements between the parties concerning union organizing, access to employees and code of conduct applicable to union organizing efforts, card check, values, etc. It is effective on July 1, 1999.

As recognized by their participation in Workplace of the Future, and as a part thereof, the Unions and the Company recognize that it is in their mutual interest to operate in the spirit of partnership and common vision. The parties also share the mutual goals of building a world class, high performance enterprise and addressing employment security through business success and employee development. As a means to achieve these goals the parties will mutually support regulatory and legislative efforts, marketing/sales and service efforts, and other business initiatives leading to employment security and AT&T's business success.

The parties also recognize that the Unions' goal of growing membership is intrinsically linked to the successful growth of the business. In order to maintain this perspective and to also avoid unnecessary confrontation, the parties agree that the following principles regarding neutrality and consent election will be applicable to all AT&T Business Operating Units and Divisions listed on Attachment 1 and shall be the exclusive means by which the Unions, their locals, or individuals acting on their behalf, will conduct an effort to organize non-management employees in the covered AT&T Business Operating Units or Divisions listed.

1  **Employee Choice**

   Both the Unions' and the Company support and agree with the principle that the decision as to whether or not to become represented by a union is one that does not belong to either the Union or to the Company. Rather, it is an individual decision that belongs to the employee. With the parties' mutual recognition of this fundamental tenet, the following provisions are intended to establish, encourage, and nurture an environment during a union organizing drive that will allow employees to choose whether or not to become represented in a fully informed and uncoerced manner. All negotiations concerning appropriate unit, access, conduct, and voting will be performed by local management and Local Union officials, i.e., those directly impacted by these discussions. The local union and management officials may request a meeting with the appropriate union and company headquarters representatives at the beginning of this process.

Other Agreements

2  **Neutrality**

The Company and the Unions agree that an organizing drive should be and will be met by a neutral position by the company. This statement is consistent with and reinforces the previously established principle of employee choice. It should follow that an environment intended to foster employee choice would be a neutral environment and that information communicated by either party would be fact based and not misleading, distorted or disparaging. Neutrality means the following:

(a) Management will not be anti-union nor will the Union be anti-management.

(b) Management will not advocate that employees should not vote for a union to represent them.

(c) The Unions will be afforded reasonable opportunities for access to employees to get their message communicated.

(d) Management will respond to employee questions, and is obligated to correct inaccurate or misunderstood information by employees.

(e) The Union(s) will be referred to by name and will not be characterized as a "third party" or "outsider".

(f) Any written information distributed to employees by either party relative to the organizing campaign will be shared with the other. The parties' communications with employees will be in accordance with this agreement.

(g) Neither party will hire consultants who encourage an adversarial relationship.

(h) Neither managers nor union representatives will be personally attacked.

(i) Neither the Union nor the Company will be attacked as institutions.

(j) The Company will not conduct "captive" audience meetings.

Allegations of violations of these provisions will be handled via the dispute resolution process contained in this Agreement.

3  **Rules**

The procedures to be followed are listed below:

(a) The Union must show a minimum of 50% + 1 show of interest on signature cards of the appropriate unit.

(b) If an election is conducted and the Union is not successful, another election will not be scheduled for twelve months.

(c) A vote of 50% + 1 of those who vote, validated by the Third Party Neutral (TPN), will determine the outcome.

302

Other Agreements

(d) The TPN will resolve any issue concerning challenged ballots in similar fashion to the NLRB process.

4 **Time Bound**

It is in the interest of both parties that the organizing campaign be conducted expeditiously. The union is therefore obligated to notify management of its intention to conduct a formal organizing drive before it begins. The date of this notification will "start the clock". The entire campaign, including the consent election, will be concluded in ninety (90) days. It is the intent of the parties that the ninety (90) day time frame will include discussion and agreement on the unit. In the event the parties are unable to agree on the unit, the dispute resolution process set forth below will be utilized and the time period will be extended by the number of days required to reach agreement on the unit, but in no event will the total campaign, including resolution of the scope of the bargaining unit and the consent election process, exceed one hundred twenty (120) days. If employees vote not to be represented, the union agrees not to initiate another campaign (nor continue the current campaign) in that same work group for twelve (12) months from the date of the conclusion of the campaign. This would not preclude the Local Union from having contact with the workers in the group. If employees vote to be represented, collective bargaining over the terms and conditions of employment will commence within sixty (60) days and will be limited to the agreed upon unit.

5 **Informed Decision**

Both parties agree that employees should be fully informed about all aspects of union representation. The Union will provide fact-based information to employees as it endeavors to convince prospective members of the merits of being represented by a labor union. Management's role during this process will include:

(a) responding to individual employee inquiries

(b) explaining the organizing process, including obligations and responsibilities

(c) correcting any inaccuracies or misstatements or misunderstandings disseminated by the Union.

6 **Free from Coercion**

Consistent with the basic tenet of employee choice, the parties want to ensure that employees have expressed their choice from an informed position and are completely free from any coercion by the Company, the Union, or any other party or parties. One way to ensure this objective is to have an NLRB conducted election.

In the alternative, the Company and the Union agree to use a process called "Consent Election". This process will work as follows:

303

Other Agreements

(a) As part of the access discussions, the parties agree to use "Consent Election".

(b) The Unions shall initiate the consent election process by providing to a third party neutral (TPN) proof of support by means of show of interest cards from 50% + 1 of the employees in the unit. The neutral will then notify AT&T and request a list of names, job titles and home addresses. The Company will furnish the list within three working days. The applicable union will also be furnished with the list. The "show of interest" cards will clearly state their purpose and that a secret ballot consent election will be conducted to determine the will of the unit. If the neutral determines that the Union(s) has a sufficient show of interest, he/she will schedule a Consent Election process in accordance with this agreement.

(c) The election process will be supervised by a mutually selected neutral, whose role it is to ensure the integrity of the process itself, and will be conducted within two (2) weeks of the submission of the Union's show of interest to the TPN. Employees will be asked to express their individual preference in a manner that will ensure that their choice will not be known to either party. The neutral will count the votes and advise the parties of the outcome. Consistent with this agreement, a vote of 50% +1 of those who vote will control. The parties may have an observer present when the TPN counts the ballots.

(d) In all cases, the election process shall take place within fourteen (14) days of receipt and verification of the Union's show of interest cards by the neutral. In those cases in which there is no dispute about the composition of the unit, the election process will be held within seven days. The election may be held at the Company location or at a neutral site as agreed by the parties. The cost of using a neutral site will be split equally by the parties.

If there is a dispute as to the composition of the unit, the neutral shall either decide the issue within an additional seven days or order an election as described above with the decision as to the composition of the unit to follow the election within no more than seven days.

### 7  Access Agreement

As soon as reasonably practicable after a request by the CWA/IBEW for access, local management and CWA/IBEW representatives will meet to discuss the details related to reasonable access to the unit by CWA/IBEW representatives. The Union(s) will be allowed reasonable opportunities for access to AT&T facilities. It is the intent and commitment of AT&T and the CWA/IBEW that the access agreed upon will not interfere with the operation and other normal and routine business activities, plans and programs of AT&T generally and, specifically, the selected unit. Access agreed upon will be in non-working areas and during employee non-working times. Agreements as to eventful access,

304

such as access to conference rooms, will be reasonable in length and there will be reasonable periods between requests for eventful access. However, uneventful access, such as a prearranged meeting with an individual employee, will not be affected by this.

If AT&T and the CWA/IBEW are unable to agree on reasonable access, the third party neutral will be asked to resolve the issue. Successful access agreements utilized at other units will be looked to for guidance as to what works and is reasonable. AT&T and the CWA/IBEW commit that they will reach such an access agreement in each instance in an expeditious manner.

8   **Dispute Resolution**

   (a) Questions or disputes arising during the course of an organizing effort within a particular unit of non-represented employees will, in all cases, be addressed first by and between the parties themselves and, in particular, local AT&T management and appropriate CWA/IBEW representatives. It is the intent and desire of AT&T and the CWA/IBEW that such matters be dealt with and are best dealt with by and between the parties themselves, particularly at the local level, without having to resort to the assistance of a third party. It is also agreed, however, that, if every good faith and reasonable effort has been made, but the matter still remains unresolved, the process described below will be utilized.

   (b) The Third Party Neutral (TPN) will resolve disputes in the manner set forth in this agreement. Either AT&T or the CWA/IBEW can refer a question or dispute, unresolved after good faith efforts have been made to resolve the dispute locally, to the chosen Third Party Neutral by providing three working days' written notice to both the other party and the TPN. The notice will provide a complete statement of the question or dispute to be addressed and a statement that the parties have attempted in good faith but have been unable to resolve the matter by and between themselves.

   (c) If the question or dispute involves a matter related to access (i.e., the nature, event, time, location, individuals involved, etc.), the TPN will fully investigate all relevant facts surrounding the question or dispute. The TPN will then call the parties together and attempt to facilitate resolution of or otherwise mediate the matter.

   If, after a good faith attempt at facilitated resolution or mediation, the access question or dispute is still not resolved, the TPN will attempt to render an immediate decision, which includes a method or alternative methods of resolving the perceived access problem. However, in no event will the TPN take longer than five (5) days thereafter to render a decision. The decision of the neutral will be final and binding and the parties agree to abide by his/her decision. This process, from the time the TPN is contacted to the

305

such as access to conference rooms, will be reasonable in length and there will be reasonable periods between requests for eventful access. However, uneventful access, such as a prearranged meeting with an individual employee, will not be affected by this.

If AT&T and the CWA/IBEW are unable to agree on reasonable access, the third party neutral will be asked to resolve the issue. Successful access agreements utilized at other units will be looked to for guidance as to what works and is reasonable. AT&T and the CWA/IBEW commit that they will reach such an access agreement in each instance in an expeditious manner.

8  **Dispute Resolution**

  (a) Questions or disputes arising during the course of an organizing effort within a particular unit of non-represented employees will, in all cases, be addressed first by and between the parties themselves and, in particular, local AT&T management and appropriate CWA/IBEW representatives. It is the intent and desire of AT&T and the CWA/IBEW that such matters be dealt with and are best dealt with by and between the parties themselves, particularly at the local level, without having to resort to the assistance of a third party. It is also agreed, however, that, if every good faith and reasonable effort has been made, but the matter still remains unresolved, the process described below will be utilized.

  (b) The Third Party Neutral (TPN) will resolve disputes in the manner set forth in this agreement. Either AT&T or the CWA/IBEW can refer a question or dispute, unresolved after good faith efforts have been made to resolve the dispute locally, to the chosen Third Party Neutral by providing three working days' written notice to both the other party and the TPN. The notice will provide a complete statement of the question or dispute to be addressed and a statement that the parties have attempted in good faith but have been unable to resolve the matter by and between themselves.

  (c) If the question or dispute involves a matter related to access (i.e., the nature, event, time, location, individuals involved, etc.), the TPN will fully investigate all relevant facts surrounding the question or dispute. The TPN will then call the parties together and attempt to facilitate resolution of or otherwise mediate the matter.

  If, after a good faith attempt at facilitated resolution or mediation, the access question or dispute is still not resolved, the TPN will attempt to render an immediate decision, which includes a method or alternative methods of resolving the perceived access problem. However, in no event will the TPN take longer than five (5) days thereafter to render a decision. The decision of the neutral will be final and binding and the parties agree to abide by his/her decision. This process, from the time the TPN is contacted to the

305

Other Agreements

<ol style="list-style-type: lower-alpha" start="1">
<li></li>
<li></li>
<li></li>
</ol>

    time his or her opinion is issued, will not take more than fifteen (15) days unless the parties agree otherwise.

(d) If the dispute involves the appropriateness of the bargaining unit the Union seeks to organize and the parties are unable to agree, after negotiating in good faith for a reasonable time, upon the description of an appropriate unit for bargaining, the issue of the description of such unit shall be submitted to the TPN and a hearing shall be conducted consistent with the rules of the AAA. The neutral shall be confined solely to the determination of the appropriate unit for bargaining and shall be guided in such deliberations by the statutory requirements of the National Labor Relations Act and the decisions of the National Labor Relations Board and Appellate reviews of such Board decisions.

(e) Regardless of the type of question or dispute that is submitted to the Third Party Neutral, the parties will each be given a full opportunity to present their positions and supporting factual information prior to the issuance of any opinion. No written briefs will be submitted. There shall be no ex parte contact with the Third Party Neutral without the concurrence of all parties. AT&T, the CWA and IBEW believe that matters pertaining to these values are best handled by and between the parties themselves and resort to a TPN should be necessary in only a limited number of cases.

AT&T and the CWA/IBEW agree that the parties may distribute a decision of the TPN to employees in the selected unit but not outside to the public such as the press.

(f) The parties agree that the process set forth herein shall be the exclusive means for resolving disputes covered by this dispute resolution process, and neither party will utilize any other forum (e.g. NLRB, federal court, etc.) to address issues subject to resolution pursuant to this process.

(g) All expenses resulting from the use of the TPN process shall be split equally by AT&T and the Union.

## 9 Acquisitions and Ventures

The parties recognize the rapidly changing nature and structure of the communications industry. AT&T may acquire (or be acquired by) another entity, it has and may in the future form joint ventures or strategic alliances, may license its brand or technology, or may be a financial investor in other entities. The employees in these entities may be non represented, represented in whole or in part by the CWA or IBEW, or represented in whole or in part by some other labor organization. It is not possible to structure a single rule which will apply to all such circumstances and the Company cannot compel other entities to abide by this agreement. Nevertheless, AT&T will, after an initial transition period of one year following the closing on an acquisition, and subject to any contrary legal or

306

Other Agreements

contractual requirements, apply this Neutrality and Consent Election agreement to any wholly owned subsidiary.

10 **Two Year Review**.

On or after May 10, 2000, either party may submit to the TPN the issue of whether there has been substantial compliance with the provisions of this Memorandum of Understanding and, if the neutral finds repeated instances of violations or repeated instances of interference during the period up to May 10, 2000, he/she may implement a process for recognition based on "card check" to replace elections in all cases or, if not, this Memorandum of Understanding shall continue in effect for the remaining term of the Agreement.

307

Other Agreements

(SS) AT&T BUSINESS OPERATING UNITS AND DIVISIONS

ATTACHMENT 1

AT&T Labs
AT&T Solutions
Brand Strategy/Marketing Communications
Business Customer Care
Business Markets
Chief Financial Officer Organization
Consumer Markets
Controller Division
Corporate Strategy and Business Development
Global Real Estate
Human Resources
International Operations Division
Law and Government Affairs
Local Services Division
Network & Computing Services
Public Relations & Employee Information
Supplier Management Division
Campus Wide
Language Line
AT&T Wireless
Excluding (pending sale):     ASA

308

# EXHIBIT 2 TO HALLER DECLARATION




July 24, 2000

Gentlemen,

Mr. J. Bock
Mr. T. Donahue
Mr. P. Hirsch
Mr. G. Nicolau
Mr. B. Usery

Gentlemen,

Attached is an agreement between AT&T Corp., and the Communications Workers of America which modifies the Neutrality and Consent Election language in the 1998 collective bargaining agreement in which you serve as a Third Party Neutral. The language on the attached Memorandum of Understandings replaces Section 10 - Two Year Review of that agreement. This agreement was reached between the parties effective July 18, 2000.

Please review and if you require further explanation, please call either of us to arrange a joint call to discuss.

Frederick N. Murray
AT&T - Employee Relations Vice President
973-898-2647

James E. Irvine
Vice President, CWA
202-434-1300

Attachment

# Memorandum Of Understanding - "A"
# July 7, 2000

1. The 401(k) Plan generally provided to non-exempt employees of AT&T Broadband as well as any pension plan generally provided to non-exempt employees of AT&T Broadband will be available to all CWA bargaining unit employees in AT&T Broadband in accordance with the expressed terms, conditions and provisions contained in the plans and/or in accordance with such plan terms, conditions or provisions and any applicable ERISA or IRS requirements. These plans may be unilaterally altered, amended, modified or otherwise unilaterally changed by AT&T Broadband without the necessity of reopening collective bargaining or engaging in collective bargaining with the CWA; provided the changes apply on a uniform basis to non-represented employees in AT&T Broadband in the same job descriptions as those represented by CWA. All other benefits or compensation programs will be subject to the normal collective bargaining process.

2. The provisions of paragraph 1 will apply to the open contract in Oakland/Bay Area without any reduction in the pending formal wage proposal already made by the company.

3. This MOU is agreed to on the condition that the companion MOU-B of July 7, 2000 is also agreed to by both parties.

_____  
Tom Pierce  
Labor Relations Vice President AT&T Broadband

_____  
James E. Irvine  
Vice President - CWA

7-24-2000 2:55PM   FROM COMM-TECH 2024341308                                            P.3

# Memorandum of Understanding - "B"

Paragraph 10 of the NCE shall be deleted and replaced with the following:

1.  **General Remedies:** The TPN has the authority (pursuant to Section 8) to issue appropriate remedial orders in connection with claimed violations of the NCE which would restore the conditions necessary to allow employees to choose whether or not to become represented in a fully informed and uncoerced manner consistent with the provisions of paragraphs (1) Employee Choice and (2) Neutrality of the NCE Agreement. Such remedies, applicable to either the Company or the Union, may include the posting of notices; cease and desist orders; postponement of the election for the notice posting period; ordering the postponement or barring of organizing efforts by the Union; an election; card check or recognition (as described in paragraph 2 below) at a specific location.

2.  **Card Check Remedy:**

    (A) Within seven days after an election, charges of NCE violations may be referred to the TPN. If the TPN finds an instance(s) of a serious or repeated NCE violation(s) by management in any organizing effort at a location where formal notice has been given by the union, the TPN may remedy the situation by setting aside the results of the election and requiring the company to recognize the Union in the appropriate unit at that location in which the election was held, provided that proof of majority support has been submitted to the AAA and verified, and provided that the TPN concludes that the Company has engaged in substantial non-compliance of the neutral environment provided for in paragraph (2) 'Neutrality' of the NCE agreement and therefore preventing employees from

PAGE. 05    201 899 0958                                              JUL 31 2000 10:33
7-24-2000 2:55PM    FROM COMM-TECH 2024341308                               P. 4

    choosing whether or not to become represented in a fully informed and uncoerced manner as provided in paragraph (1) 'Employee Choice' of the NCE Agreement.

(B) If the TPN finds an instance(s) of a serious or repeated NCE violation(s) by management in any organizing effort at a location where formal notice has been given by the union but a request for election has not yet been submitted, the TPN may provide for recognition by card check in the appropriate unit at that location subject to the union's notice. The cards may be submitted during a 90 day period following the TPN's decision if he/she has concluded that the Company has engaged, at that location, in violations of the NCE of such severity that other remedies (including those set forth in paragraph 1, above) would not restore conditions which would allow employees to choose whether or not to become represented in a fully informed and uncoerced manner. In these cases, charges of NCE violations must be submitted to the Company and the TPN within 7 days of the claimed violation. It being understood that both parties will endeavor to resolve any and all disputes as soon as possible. In the event the TPN finds such a severe violation of the NCE, the Union shall provide the required show of interest cards to the AAA during the 90 day period. The Company shall then provide to the AAA its *Excelsior* list of unit employees within three business days of the date the Company is notified of receipt of such cards by the AAA. If there is a dispute as to the composition of the unit it shall be referred to the TPN. After receipt and verification by the AAA, if majority support has been provided, the Union will be recognized at that location.

3. **Bargaining**: It is expected that a Collective Bargaining Agreement could be reached 90

days after bargaining has commenced. In any case, all issues will be discussed within that time period. In the event an agreement is not reached in that time period, either party may elect to submit the negotiations to mediation. A permanent mediation panel will be established within 30 days of the effective date of this Agreement. The mediator will issue a report and recommend actions within 30 days of the referral to the appropriate Business Operating Unit management and Union officials.

4. **Single Points of Contact**: AT&T shall designate a single manager who acts as the single point of contact for CWA for all units in AT&T concerning the enforcement of the NCE. The CWA C&T Vice President shall interface with that individual on an ongoing basis regarding interpretation of the NCE. Neither this Agreement nor actions arising from or relating to it shall be used in support of any claim, allegation or argument, that AT&T and/or any of its current or future subsidiaries, and/or their divisions, units, agents or affiliates, are or have been a single employer, joint employers, accretions or alter-egos with respect to each or any of them.

5. **Effective Date:** These changes are effective as of May 10, 2000 and either party may bring any disputes as to elections conducted after May 10 before the TPN for consideration as outlined above, provided such notice is given within seven days of the date that these modifications are executed by both parties. Any and all claims that were or could have been raised by either party in connection with elections conducted before May 10, 2000 shall be deemed waived.

_____  
Frederick Murray  
AT&T Employee Relations Vice President  
Date: 7/24/00

_____  
James E. Irvine  
Vice President CWA  
Date: 7·24·00